**UNITED STATES of America,**

v.

**Nicholas ALLOCCO, Defendant.**

**No. 91 CR 1304(S).**

United States District Court,
E.D. New York.

Sept. 24, 1992.

Andrew J. Maloney, U.S. Atty. E.D.N.Y. by Bridget Rohde, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Ronald Rubinstein, Kew Gardens, N.Y., for defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

The defendant in the above-referenced prosecution is charged with five counts of mail fraud for filing fictitious and inflated claims in connection with his fire-damaged property.. Currently before the Court are defendants pre-trial motions as well as the government's motion *in limine* to admit evidence pursuant to Fed.R.Evid. 404(b). For the reasons stated below, the Court denies defendant's motions, except to the extent that the government must furnish him with certain particulars; grants the government's motion in part, subject to the proviso noted below; and denies the government's motion in part.

## BACKGROUND

At the beginning of 1989, defendant planned to open a wholesale video store in a leased building at 989 Wyckoff Avenue in Queens. He endorsed his Warwick fire insurance policy to cover this location. Just prior to the opening of the store, a fire occurred. The fire marshal reported that the fire was the result of "careless smoking", but an independent fire protection consultant concluded that the fire had been purposefully set.

On March 6, 1989, through his broker, defendant telephonically made his claim for damages allegedly resulting from the aforementioned fire. He submitted sworn Proof of Loss statements for the coverage limits of the policy, $1.5 million, as well as invoices to support those statements. The invoices only supported a fraction of the claim, and handwriting analyses revealed that defendant had authored several of the invoices. Moreover, the businesses that had purportedly issued the fictitious invoices were not in business at the time the invoices were dated.

On April 24, 1992, the Grand Jury returned a superseding indictment charging defendant with five counts of mail fraud.

Defendant now moves for the following: a dismissal of all but the first count of the superseding indictment on the ground that the subsequent counts are multiplicitous of the first; a bill of particulars providing the names of the "others" referred to in the indictment and date, time and place information; an order conferring immunity on Barry E. Babich, a potential witness for the defense; the preclusion of any evidence of arson; and the preclusion of defendant's testimony before a grand jury in a separate investigation. For its part, the government moves *in limine* for the admission pursuant to Fed.R.Evid. 404(b) of defendant's fraudulent claims to the United Parcel Service ("UPS") and Federal Express.

DISCUSSION

## I. DEFENDANT'S MOTIONS

### A. *Multiplicitous Counts*

Defendant claims that Counts One through Five of the superseding indictment relate to a single scheme and have been charged in separate counts in violation of double jeopardy. Therefore, defendant asks that the Court dismiss Counts Two through Five, or, in the alternative, that the Court order the government to disclose in advance of trial which counts they intend to rely upon in prosecuting defendant.

It is well recognized that allegations of separate mailings in furtherance of a scheme to defraud are not multiplicitous. *See United States v. Biaggi,* 675 F.Supp. 790, 800 (S.D.N.Y.1987); *United States v. Gordon,* 493 F.Supp. 814 (N.D.N.Y.1980) ("Each mailing, or its use in the execution of the alleged scheme to defraud, may be [separately] charged.") (citations omitted), *aff'd,* 655 F.2d 478 (2d Cir.1981); *United States v. Brodbeck,* 430 F.Supp. 1056, 1060 (E.D.Wis.1977) (" '[T]here is no doubt that the law may make each putting of a letter into the post office a separate offense.' ") (quoting *United States v. Joyce,* 499 F.2d 9, 18 (7th Cir.1974)) (citation omitted); *see also* 1A L. Sand, *et al., Modern Federal Jury Instructions,* Instruction 44–3, Comment at 44–11 (1990 ed.) ("Each separate use of the mails in furtherance of a scheme to defraud constitutes a separate offense.") (citing Fifth Circuit Pattern Instruction No. 2.54). The superseding indictment in this case cites to five separate instances of defendant's alleged use of the mails for fraudulent purposes, including two letters mailed approximately April 11, 1989 (Counts One and Two); one mailed approximately April 27, 1989 (Count Three); one mailed approximately April 28, 1989 (Count Four); and one mailed approximately May 5, 1989 (Count Five). Because each of these incidents constitutes a separate offense, the Court denies defendant's motion to dismiss Counts Two through Five.

### B. *Bill of Particulars*

Defendant seeks a bill of particulars furnishing the name or names of those individuals referred to in the indictment as the "others" with whom defendant "devised a scheme ... to defraud ... an insurance carrier" and a clarification of the date, time and place of the alleged incidents.

A defendant may seek a bill of particulars to enable him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted again for the same offense. *United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988) (*quoting United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987)). The decision as to whether to order a bill of particulars rests in the sound discretion of the trial court. *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984).

The government need not particularize its evidence unless the requested particularization is necessary to give the defendant enough information about the offense charged so that he may, by the use of diligence, prepare adequately for trial. *See Bortnovsky,* 820 F.2d at 573; *United States v. DeFabritus,* 605 F.Supp. 1538, 1547–48 (S.D.N.Y.1985). If the government has provided the needed information in some other satisfactory form, then no bill of particulars is required. *Bortnovsky,* 820 F.2d at 574; *United States v. Hilliard,* 436 F.Supp. 66, 76 (S.D.N.Y.1977).

The superseding indictment in this action sets forth the following details as to each alleged incident of mail fraud: the approximate date of mailing; a description of the matter involved; the sender; and the addressee. While the indictment is detailed, the Court finds that the government must provide defendant with the names of "the others" referred to in the indictment in order to allow defendant to properly prepare for trial. Such information, combined with the details just described, will adequately inform defendant of the accusations against him.

### C. *Use Immunity to Potential Defense Witness*

Defendant asks the Court to order the government to grant use immunity un-

der 18 U.S.C. § 6002 to Barry E. Babich, a potential defense witness. Mr. Babich was the claim adjuster who prepared the claim that is the subject of the indictment in this action. Without further explanation, defendant claims that Mr. Babich's testimony would be material and exculpatory.

The fifth amendment does not require that "defense witness immunity ... be ordered whenever it seems fair to grant it." *United States v. Turkish*, 623 F.2d 769, 777 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). In fact, it is a "long-standing principle" in the Second Circuit that "[i]mmunity remains 'preeminently a function of the Executive Branch'", *United States v. Bahadar*, 954 F.2d 821, 825 (2d Cir.1992) (citing *United States v. Salerno*, 937 F.2d [797] at 807 [ (2nd Cir.1991) ] (citation omitted)), and should "rare[ly]" be ordered by a district court judge. *Bahadar*, 954 F.2d at 825; *see United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir.1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980) (citation omitted) ("extraordinary circumstances" might require government to confer use immunity on defense witness).

The test for granting such immunity is as follows: first, the Court must find that the government "has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment", *Bahadar*, 954 F.2d at 826; second, the witness's testimony must be " 'material, exculpatory, and not cumulative' ", *id.* (quoting *United States v. Burns*, 684 F.2d 1066, 1077 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)); and third, the testimony must be unobtainable from any other source. *Bahadar*, 954 F.2d at 826. In the eight years since this test has been in effect in the Second Circuit, there has never been a case "in which the defendant gets over the first hurdle, let alone succeeds entirely." *Id.*

In the case at bar, there is no indication, nor does defendant allege, that the government has engaged in discriminatory use of immunity or forced Mr. Babich to invoke the fifth amendment. In fact, the government has not granted immunity to any witness. Moreover, according to the government, Mr. Babich has not been indicted and is not the target of any government investigation, nor has he been contacted by the government in any capacity. Accordingly, defendant does not "get over the first hurdle" of the above-described test, and his motion for an order of immunity is hereby denied.

### D. Preclusion of Evidence of Arson

Defendant seeks an order of this Court directing the prosecution to refrain from introducing any evidence of arson relating to this case. Defendant claims that such evidence is inconclusive and irrelevant, and as such would, if introduced, deny him a fair trial.

Federal Rule of Evidence 401, which contains the definition of "relevant" evidence, also implicitly includes in that definition the notion of materiality. That is, relevant evidence must not only "make the existence of any fact more probable ... than it would be without the evidence," but the fact proved must be "of consequence to the determination of the action", or "material". Fed.R.Evid. 401. To be "material", a proposition need not be an element of the crime charged or a cause of action or defense: it must merely be " 'in issue' in the sense that it is within the range of litigated matters in controversy." *United States v. Dunn*, 805 F.2d 1275, 1281 (6th Cir.1986).

The superseding indictment in this case charges that "[o]n March 2, 1989, in Queens, New York, property located at 989 Wyckoff Avenue was damaged as a result of arson." The superseding indictment reflects that the evidence of arson is part of the government's theory of the case and part of the complete picture of events that led to the indictment. As such—although it is not an element of the crime charged— it is material and relevant. *See United States v. Dunn*, 805 F.2d 1275, 1277 (6th Cir.1986) (neither Court nor parties questioned that evidence of arson was admissible in mail fraud case); *United States v. Wiley*, 534 F.2d 659, 660 (6th Cir.), *cert.*

*denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 819 (1976) (same).

Accordingly, the Court declines to preclude the evidence of arson at this juncture.[1] However, prior to the introduction of this evidence at trial, the Court will hear the government's proffer in this regard and will apply a Fed.R.Evid. 403 balancing to determine whether its probative value is substantially outweighed by the danger of unfair prejudice to defendant.

E. *Preclusion of Defendant's Grand Jury Testimony*

Defendant seeks an order precluding the introduction of his grand jury testimony in another investigation because, "upon information and belief", that testimony was given under a grant of immunity. According to the government, defendant did not testify under a grant of immunity, and was, in fact, reminded on the record that he was a target of the investigation. Moreover, pursuant to Fed.R.Evid. 801(d)(2)(A), the government furnished defendant with a copy of the grand jury testimony. Accordingly, unless defendant comes forward with proof that he testified pursuant to a grant of immunity, defendant's request in this regard is denied.

## II. THE GOVERNMENT'S MOTION

The government moves *in limine* for the admission pursuant to Fed.R.Evid. 404(b) of defendant's fraudulent claims to UPS in 1988 and 1989 and to Federal Express in 1989.

Federal Rule of Evidence 404(b) provides that prior act evidence "is not admissible to prove the character of a person in order to show action in conformity therewith", but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The Second Circuit follows an " 'inclusionary approach' " to the rule. *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986), *cert. denied,* 490 U.S.

1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989) (citation omitted). This approach allows such evidence " 'for any purpose other than to show a defendant's criminal propensity.' " *United States v. Roldan–Zapata,* 916 F.2d 795, 804 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991) (citation omitted).

The standards by which a district court is to assess the admissibility of other acts evidence under Rule 404(b) are well-established: the court must first determine if the evidence is offered for a proper purpose; if so, the court must decide whether it is relevant, and then whether its probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Gilan,* 967 F.2d 776, 780 (2d Cir. 1992) (citing *Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)). Upon request, the district court must give an appropriate limiting instruction to the jury. *United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992); *United States v. Colon,* 880 F.2d 650, 656 (2d Cir.1989).

Where a defendant's intent is clearly at issue, evidence of prior acts may be admissible to prove intent or knowledge. *Pitre,* 960 F.2d at 1119; *see United States v. Caputo,* 808 F.2d 963, 968 (2d Cir.1987) (citations omitted). The prior acts in this case are as follows: Between June of 1988 and November of 1989, defendant submitted five claims to UPS seeking reimbursement for videotapes allegedly placed with UPS for delivery but never received by the consignee. UPS paid the first three claims but declined to pay the last two after an investigation revealed that they were fraudulent. In late 1989, defendant and his partner in 94th Street Video, Inc., Thomas Brooksbank, made claims totalling approximately $120,000 to Federal Express for two allegedly lost shipments of videotapes. Federal Express settled the claims for $100,000, in spite of a recommendation by one of their investigators that the claims be denied because, for a variety of reasons, they did not appear to be valid.

---

**1.** The Court certainly acknowledges that, as defendant points out, the evidence of arson is inconclusive. However, that goes to the weight of the evidence—not its admissibility.

 At the outset, the Court notes that 404(b) evidence must be relevant to be admissible, and it is only relevant if "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (citing *United States v. Beechum*, 582 F.2d 898, 912–13 (5th Cir. 1978) (en banc)). In determining whether the government has introduced sufficient evidence to demonstrate that the acts are relevant, the Court is guided by Rule 104(b), which dictates that the Court "examine[ ] all the evidence in the case and decide[ ] whether the jury could reasonably find [that the claims were fraudulent] by a preponderance of the evidence." *Id.* (citation omitted).

 The government's proffer with respect to the claims defendant filed with UPS includes documentation evidencing that, among other things, the drivers' initials on the pick-up sheets obtained from defendant were forged. Based on this uncontested proffer,[2] set forth in more detail in the government's Memorandum of Law at pages five through six, the Court finds that a jury could reasonably find by a preponderance of the evidence that the claims defendant submitted to UPS were fraudulent.

 In contrast, the government's proffer with respect to defendant's claims to Federal Express falls short of that standard. Although the proffer, set forth at pages seven through nine of the government's Memorandum of Law, reflects a possibility that defendant engaged in fraudulent conduct, the government does not submit supporting documentary evidence and, as noted, Federal Express settled the claims, amounting to $120,000, for $100,000. Based on the government's proffer, the Court concludes that a jury could not reasonably find by a preponderance of the evidence that these claims were fraudulent. *See generally United States v. Gi-*

*lan*, 967 F.2d 776 (2d Cir.1992). Thus, although the UPS claims satisfy the relevancy standard set forth in *Huddleston*, the claims to Federal Express do not meet this standard, and thus cannot be introduced pursuant to Rule 404(b). *See Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501.

Having found that defendant's claims to UPS are relevant, the Court concludes that they are probative of defendant's intent in this case. *See Pitre*, 960 F.2d at 1119; *Caputo*, 808 F.2d at 968. However, a defendant " 'may completely forestall the admission of . . . other act evidence on the issue of intent by "express[ing] a decision not to dispute [the issue of intent]." ' " *Pitre*, 960 F.2d at 1119 (citations omitted). To do so, the defendant " 'must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed.' " *Id.* (citation omitted).

Although at this point it is not clear what defense defendant will raise at trial, mail fraud is a specific intent crime; therefore, it is possible that defendant will claim that he lacked the requisite knowledge and intent to defraud. Thus, if defendant puts in issue his knowledge or intent during opening statements or cross-examination, the Court will allow the government to admit the above-described UPS claims in its case-in-chief, *see id.* (citation omitted), subject to Fed.R.Evid. 403.[3] If, on the other hand, it is unclear whether the issue of intent will be contested, the Court will await the conclusion of defendant's case to make a determination as to the admissibility of this evidence, *see id.* (citation omitted), once again, subject to Rule 403. Finally, if defendant makes it clear to the Court that he will not dispute the issue of intent, the evidence of his fraudulent claims to UPS will not be admitted. *See id.* (citations omitted).

### CONCLUSION

For the foregoing reasons, the Court denies defendant's motions, except to the ex-

---

**2.** Defendant did not submit papers in opposition to the government's motion.

**3.** The Court notes that "the strength of the evidence establishing the similar act is one of the

factors the Court may consider when conducting the 403 balancing." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501.

tent that the government must furnish him with certain particulars. The Court denies the government's motion with respect to defendant's claims to Federal Express, but grants the government's motion with respect to the UPS claims subject to defendant putting his intent in issue at trial.

SO ORDERED.