**UNITED STATES OF AMERICA,**

v.

**Nathaniel DAMES, Defendant.**

**No. 04CR1247VM.**

United States District Court, S.D. New York.

Aug. 2, 2005.

### DECISION AND ORDER

MARRERO, District Judge.

Defendant Nathaniel Dames ("Dames") is charged in a two-count indictment with (1) causing the intentional killing of David Harris ("Harris") while Dames was engaged in a conspiracy to distribute and possess with intent to distribute cocaine base and cocaine, in violation of Section 848(e)(1)(A) of Title 21 of the United States Code; and (2) the intentional killing of Harris with a firearm in relation to and in furtherance of a conspiracy to distribute cocaine base and cocaine, in violation of Section 924(j) [1] of Title 18 of the United

---

1. The Indictment charges Dames with a violation of Title 18, United States Code, Section 924(i). However, the Government's Memorandum of Law in Opposition to Defendant's Pre–Trial Motions, dated May 23, 2005 ("Gov't Mem."), indicates that count two of the Indictment intended to plead a violation of Title 18, United States Code, Section 924(j). In light of the facts of the case known to the Court, as well as the positions taken by the parties in their motions, memoranda and letters to the Court, it appears the Indictment contains a typographical error and that the applicable statutory provision is indeed 924(j). As discussed at the parties' pretrial conference with the Court on July 29, 2005, the Government will submit a letter to this effect. *See* Fed.R.Crim.P. 7(c); *see also Unit-*

States Code. (Indictment 04 Cr. 1247, dated November 23, 2004 ("Indictment"), at 1–2.) Dames filed a motion for omnibus pretrial relief, each request of which the Court considers below.

## I. *BACKGROUND*

Dames is alleged to have intentionally caused the killing of Harris with a firearm on or around April 4, 1995 while engaged in a drug conspiracy. The indictment alleges that an identifying witness ("Identifying Witness") viewed this event. On August 12, 2004, the Identifying Witness was presented with a photographic array of six potential suspects. (Admonision, dated August 12, 2004 ("Admonision"), attached to Gov't Mem.) The instructions written on the Admonision provide:

> You will be asked to look at a group of photographs. The fact that the photos are shown to you should not influence your judgment in any way. You should not conclude nor guess that the photographs contain the picture of the person who committed the crime. You do not have to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties.... Please do not indicate to other witnesses that you have or have not made an identification.

(Admonision.) The Identifying Witness identified the photo of Dames as that of the culprit of the alleged crime. Following the identification, Dames was indicted on two counts by a federal grand jury in the Southern District of New York.

The Government disclosed in discovery the existence of at least three firearms that it intends to offer at trial. The first is a 9mm handgun which allegedly has been identified as the weapon used to shoot and kill Harris. The second is a revolver alleg-

edly removed from Harris's person after his murder. It is the Government's contention that this revolver was used by Harris to shoot Dames several weeks before Harris's murder. The third is a MAK–90 firearm which was discovered in an apartment on 124th Street in Manhattan. The Government claims that the apartment was used by Dames and others in connection with the alleged drug conspiracy.

Dames moved on May 5, 2005 for (1) discovery of evidence pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16"), as well as material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and the Jencks Act, 18 U.S.C. § 3500; (2) a bill of particulars; (3) the preclusion of the firearms from being admitted into evidence; (4) a hearing to suppress identification testimony; and (5) the exclusion of evidence of Dames's "other crimes" and bad acts. The Government opposed all of Dames's motions.

## II. *DISCUSSION*

### A. *DISCOVERY REQUESTS*

■ Dames's motion for discovery pursuant to *Giglio* relating to the Government's witnesses is entirely premature. (Memorandum of Law in Support of Defendant Nathaniel Dames's Motion for Omnibus Pre-trial Relief, dated May 5, 2005 ("Def.Mem."), at 4–6.) The Government is under no obligation at the present time to disclose *Giglio* material, as the Government's obligation to do so arises only with the pendency of trial and knowledge of the specific testifying witnesses. *See United States v. Coppa,* 267 F.3d 132, 144 (2d Cir.2001); *United States v. Jacques Dessange, Inc.,* No. 99 Cr. 1182,

*ed States v. Miller,* 116 F.3d 641, 669–70 (2d Cir.1997).

2000 WL 280050, at *9 (S.D.N.Y.2000) ("*Giglio* material is customarily produced in this District with Section 3500 material in recognition of the fact that this type of *Brady* material does not ordinarily require any independent investigation in order to use it effectively at trial."); *United States v. Frank*, 11 F.Supp.2d 322, 325 (S.D.N.Y. 1998) (noting that courts have approved the disclosure of *Giglio* material as late as the day that the witness testifies). The Government has indicated that it will disclose all relevant *Giglio* material at least one week before the trial in this matter, which Dames has failed to show would not be "in time for its effective use" at trial. *Coppa*, 267 F.3d at 144. Since Dames has made no special showing that demonstrates prejudice suffered in not having immediate access to the material, the Court is not persuaded that a sufficient basis exists at this point to grant Dames's motion.

■ Dames has also requested discovery of materials pursuant to *Brady*. The Government's obligation under *Brady* is "to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or punishment." *Coppa*, 267 F.3d at 139. The Government has indicated that it is not aware of the existence of any *Brady* material as to Dames, and acknowledges its continuing obligation to disclose any such material. Dames's motion as to this discovery request is, therefore, denied. Should Dames become aware of any failure on the Government's part to comply with its *Brady* obligations, he may renew his motion at that time.

In addition, Dames requested a list of the Government's witnesses and any statements made by those witnesses. The Court is precluded from ordering the pretrial disclosure of witness statements. *See Coppa*, 267 F.3d at 145. As to Dames's request for a list of the Government's wit-

nesses, the Court finds that Dames has failed to establish a "particularized showing of need" for such information at this time. *See United States v. Pastor*, 419 F.Supp. 1318, 1330 (S.D.N.Y.1976). The Court, therefore, denies Dames's request at this stage.

To the extent the Government may not have as yet fully complied with its discovery obligations under Rule 16, which includes the disclosure of material such as Dames's prior criminal record, results of any examinations or tests, and access to documents and objects, Dames's request as to these materials is granted. Fed. R.Crim.P. 16. As discussed below in section II.E, requests for information regarding any "bad acts" to be presented by the Government in connection with this case are premature.

### B. *BILL OF PARTICULARS*

#### 1. *Legal Standard*

■ "Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). The decision of whether to grant a bill of particulars rests within the sound discretion of the Court. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). In exercising its discretion to grant a bill of particulars or not, the Court must evaluate the charges contained in the indictment and the state of discovery. The Supreme Court has stated that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly

informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see United States v. Glaze,* 313 F.2d 757, 759 (2d Cir.1963); *United States v. Nachamie,* 91 F.Supp.2d 565, 570–71 (S.D.N.Y.2000) (citing *Bortnovsky,* 820 F.2d at 574).

■ A bill of particulars is not appropriate where it would merely disclose the government's trial strategy, as that would "do little more than unduly restrict the government's proof at trial." *United States v. Wilson,* 565 F.Supp. 1416, 1439 (S.D.N.Y.1983). Nor is the proper scope and function of a bill of particulars to obtain disclosure of evidence or witnesses to be offered by the government at trial. *Torres,* 901 F.2d at 234; *United States v. Strawberry,* 892 F.Supp. 519, 526 (S.D.N.Y.1995); *see* 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 129 (3d ed. & Supp.2005) ("The bill of particulars . . . is intended to give the defendant enough information about the charge so that he or she may adequately prepare a defense and so that surprise will be avoided. It is not intended, as such, as a means of learning the government's evidence and theories.").

Thus, a bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused;" it "is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999) (internal quotation marks omitted). Accordingly, "the Second Circuit has 'consistently sustained indictments which track the language of a statute and, in addition, do little

more than state time and place in approximate terms.'" *United States v. Berganza,* No. S(4) 03 Cr. 987, 2005 WL 372045, at *5 (S.D.N.Y. Feb.16, 2005) (citing *United States v. Salazar,* 485 F.2d 1272, 1277 (2d Cir.1973)).

### 2. *Dames's Motion for a Bill of Particulars*

Dames's motion for a bill of particulars comprises three parts. The first pertains to counts one and two of the Government's Indictment. (Def. Mem. at 6.) The second relates to circumstances surrounding Dames's arrest. (Affirmation of Stacey Richman, dated May 5, 2005 ("Richman Affirmation"), at 7.) The third concerns an alleged previous shooting of Dames by Harris. (Defendant's Letter in Reply to Government's Opposition to Nathaniel Dames's Pre–Trial Omnibus Motion, dated June 3, 2005 ("Def.Reply"), at 2.)

■ The Court finds that a bill of particulars clarifying the conspiracy referred to in counts one and two of the Indictment is warranted in this case. The Court would find a bill of particulars that essentially "'tracks the language of the statute'" and provides an approximate date and location of occurrence sufficient. *Berganza,* 2005 WL 372045, at *5 (citing *Salazar,* 485 F.2d at 1277). The Court, therefore, grants Dames's motion for a bill of particulars to this extent.

■ Dames's request for a bill of particulars providing information about the circumstances surrounding his arrest is denied. The information requested is unrelated to Dames's ability to understand the specific crime with which he is charged and against which he must mount a defense, as well as his ability to protect himself against double jeopardy. *See Hamling,* 418 U.S. at 117, 94 S.Ct. 2887; *United States v. Feola,* 651 F.Supp. 1068,

1131–32 (S.D.N.Y.1987). Discovery under Rule 16 is the appropriate avenue for obtaining the requested information. Furthermore, while illegally obtained evidence is inadmissible in court, that is an issue to be raised separately in a motion to suppress, supported by assertions demonstrating an issue of fact as to the legality of the obtained evidence. *See* 2A Charles Alan Wright & Arthur R. Miller, *supra,* § 408.

Likewise, Dames's motion for a bill of particulars relating to a previous shooting of Dames by Harris is denied. The alleged incident, alluded to by the Government in its opposition papers, is not a part of the Indictment or the specific acts with which Dames is charged. (Gov't Mem. at 19.) Indeed, it relates only to circumstances surrounding the alleged killing and a possible motive the Government may wish to present and argue at trial. (*Id.*) A bill of particulars, however, may not be used to compel the Government to provide pretrial evidentiary details about its case, nor may it be used to compel disclosure of the Government's legal theories of the case. *See United States v. Muyet,* 945 F.Supp. 586, 599 (S.D.N.Y.1996); *see also United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988); *United States v. Biaggi,* 675 F.Supp. 790, 809–10 (S.D.N.Y.1987). Since granting Dames's motion as to these facts would be an "[a]cquisition of evidentiary detail," Dames's motion on this point is denied. *Torres,* 901 F.2d at 233–34 (internal quotation marks omitted).

## C. *PRECLUSION OF EVIDENCE OF FIREARMS*

The Court denies Dames's motion to preclude, pursuant to Federal Rules of Evidence 402 and 403, the admittance into evidence of the revolver and MAK–90 described above, without prejudice to its renewal before trial. (Def. Mem. at 8.)

Whether evidence is eventually deemed relevant, prejudicial or probative depends on the purpose and circumstance of its use. *See* Fed.R.Evid. §§ 401, 402, 403. Although the Government has made some preliminary disclosures regarding its potential use of the various firearms that it claims are relevant in this case (*see* Gov't Mem. at 22–23), the Court cannot at this stage make a determination as to their admissibility. Until it is known whether and how the Government intends to use the evidence of the firearms at trial, or even whether the case will proceed to trial, the Court denies Dames's motion to preclude the admittance of the firearms into evidence at this time.

## D. *PRETRIAL IDENTIFICATION PROCEDURES*

### 1. *Legal Standard*

■ Dames's right to due process includes the right not to be the object of suggestive police identification procedures. *Simmons v. United States,* 390 U.S. 377, 383–86, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Concepcion,* 983 F.2d 369, 377 (2d Cir.1992). However, absent any showing that such procedures were used, the court acts within its discretion when denying a pretrial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *See United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969); *United States v. Fernandez,* No. 00 Cr. 46, 2000 WL 991667, at *2 (S.D.N.Y. July 19, 2000) (applying *Culotta* in reviewing defendant's request for a *Wade* hearing); *United States v. Ruggiero,* 824 F.Supp. 379, 395 (S.D.N.Y.1993).

In order to prevail on a motion to suppress identification evidence, Dames must demonstrate that "the pretrial identification procedures were unduly suggestive of [his] guilt." *United States v. Maldonado–*

*Rivera,* 922 F.2d 934, 973 (2d Cir.1990). If sufficiently shown, the court next "weigh[s] the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable." *Id.* Yet, if there is no showing in the first step of the analysis that the procedures were suggestive, "any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility." *Id.*

## 2. *Dames's Motion*

Dames fails to demonstrate any disputed issues of fact that warrant a pretrial hearing concerning the reliability of an anticipated in-court identification. *See United States v. Castellano,* 610 F.Supp. 1359, 1439 (S.D.N.Y.1985) ("A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required."); *see also Ruggiero,* 824 F.Supp. at 395. Indeed, Dames has made no threshold showing of suggestiveness. *See Castellano,* 610 F.Supp. at 1439; *see also United States v. Leonardi,* 623 F.2d 746, 755 (2d Cir.1980). Instead, Dames relies simply on statements that are general, conclusory and based on conjecture. *See Castellano,* 610 F.Supp. at 1439. Dames's motion states:

> In the case at bar, defendant Dames is without sufficient information to know what if any unduly suggestive identification procedures may have been employed by law enforcement officers in obtaining an identification of the defendant as one of the perpetrators of the charged offenses. However, the defendant maintains his innocence and attributes any identification of him as made in error, possibly as the result of inappropriate identification procedures. Absent any other explanation consistent with his innocence, defendant submits that his identification is the product of unduly suggestive police procedures.

(Def. Mem. at 10; *see also* Def. Reply at 1–2.) This conclusory statement, based on speculation alone, appears to be a contestation of Dames's guilt, rather than an allegation of the use of specific unduly suggestive procedures during the pretrial identification. *See Castellano,* 610 F.Supp. at 1439. Therefore, since Dames's "moving papers [do] not state sufficient facts which, if proven, would have required the granting of the relief requested by appellant," the Court is "not required as a matter of law to hold an evidentiary hearing." *Culotta,* 413 F.2d at 1345; *see Grant v. United States,* 282 F.2d 165, 170 (2d Cir. 1960).

Further, considering the facts of the pretrial investigation presently before the Court, the Court finds no indications of an unduly suggestive identification procedure. *See United States v. Richardson,* 837 F.Supp. 570, 572–73 (S.D.N.Y.1993). The Supreme Court has held that the use of photographic arrays in pretrial identifications is not *per se* unconstitutional. *Simmons,* 390 U.S. at 384, 88 S.Ct. 967. Instead, the question of constitutionality is determined in each case in light of the particular procedure at issue, including the size of the array, the manner of presentation by the officers, and the array's contents. *See id.; Concepcion,* 983 F.2d at 377. "If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs, ... or the use of suggestive comments, the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." *Concepcion,* 983 F.2d at 377 (internal citations and quotation marks omitted; alteration in original).

In the case at bar, Dames has provided no detailed facts to demonstrate that any such inherently prejudicial identification procedures were employed. *See Concepcion,* 983 F.2d at 377. The photographs in the array presented to the Identifying Witness—six—is a legally permissible number. (Admonision); *see United States v. Bennett,* 409 F.2d 888, 898 (2d Cir.1969) (holding that an array of six not so small as to be impermissibly suggestive). The photographs themselves, approximately all the same size, are of males with medium to dark skin, with little or no head hair, and similar patterns and amounts of facial hair. (Admonision.) The contents of this array are, in fact, arguably less suggestive than those of the array held to be non-suggestive in *Bennett,* where the identifying witness was presented with six photographs, only four of which depicted black males, and the black defendant's picture was in the form of a mug-shot. *Bennett,* 409 F.2d at 899.

Moreover, written between the photographs and the portions of the form to be filled by the Identifying Witness is the statement:

> You will be asked to look at a group of photographs. The fact that the photos are shown to you should not influence your judgment in any way. You should not conclude nor guess that the photographs contain the picture of the person who committed the crime. You do not have to identify anyone.

(Admonision.) Taken together, these facts demonstrate that the pretrial identification procedure was not unduly suggestive. It does not appear that Dames's picture so stood out from all of the other photographs as to " 'suggest to [the][I]dentifying [W]itness that [Dames] was more likely to be the culprit.'" *Concepcion,* 983 F.2d at 377 (quoting *United States v. Archibald,* 734 F.2d 938, 940 (2d Cir.1984)).

Nor do the written instructions indicate improper behavior on the part of the Government intended to prejudice the Identifying Witness against Dames. In fact, the instructions seem designed to have the opposite effect.

The only fact put forth by Dames's motion on this issue concerns the almost ten-year time lag between the alleged witnessing of the event and the pretrial identification. (Richman Affirmation at 8.) Nonetheless, absent any factual assertions alleging the use of unduly suggestive identification procedures, determinations as to the reliability of the Identifying Witness and his or her identification of the suspect are questions of credibility for the jury that are best pursued and argued on cross-examination. *See Watkins v. Sowders,* 449 U.S. 341, 349, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981); *see also Foster v. California,* 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Accordingly, Dames's motion for a pretrial hearing on the reliability of the anticipated in-court identification by the Identifying Witness is denied.

### E. EVIDENCE OF "OTHER CRIMES"

Dames's motion to exclude evidence of other "bad acts" pursuant to Federal Rule of Evidence § 404(b) is denied as premature. (Def. Mem. at 10.) The Government has not given notice of any "other crimes" it intends to disclose. (Gov't Mem. at 20.) Additionally, the Government's assurance that it will turn over any such evidence at least 14 days prior to trial seems reasonable. *Id.* Accordingly, the Court denies this motion without prejudice, subject to its renewal if and when such "bad acts" come to light.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that motion of defendant Nathaniel Dames ("Dames") for materials pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500, is **DENIED;** and it is further

**ORDERED** that Dames's motion for discovery pursuant to Federal Rule of Criminal Procedure 16 is **GRANTED** to the extent described above; and it is further

**ORDERED** that Dames's motion for a bill of particulars regarding counts one and two of the indictment is GRANTED; and it is further

**ORDERED** that Dames's motion for a bill of particulars regarding the circumstances of his arrest and a previous shooting of Dames by David Harris is DE-NIED; and it is further

**ORDERED** that Dames's motion to preclude the admittance of certain firearms into evidence is DENIED, without prejudice to its renewal before trial; it is further

**ORDERED** that Dames's motion for a pretrial hearing on the reliability of the anticipated in-court identification by the Identifying Witness is DENIED; and it is finally

**ORDERED** that Dames's motion to exclude evidence of Dames's other crimes is DENIED, without prejudice to its renewal before trial.

**SO ORDERED.**